ROANE, Judge.
In the case of Mackie v. Davies, the general doctrine and ground of an- assignor’s liability were considered, and laid down by the court. It.is therefore unnecessary to go into the doctrine in the present case, further than, for myself, to explain one or two positions there stated.
In that case, we were much pressed to lay down the precise line at which the assignor’s liability commenced; the criterion ascertaining wherein due diligence consisted ; but the court resisted the application, and left it upon the foot of due diligence, under all the circumstances of the case.
In the case of bills of exchange and negotiable notes, it is more easy and perhaps more necessary to lay down a general rule upon this subject, than in the case of bonds : more easy, because the diligence required in respect of them by the English law, is more simple, consisting only in making a demand and protest; whereas, in the case of bonds, it is necessary to sue in a reasonable time, and in a judicious manner: more necessary, because bills and notes are more in the nature of currency than bonds; circulate more rapidly and generally; and are more affected by the usage of merchants. The sanction of this court has been given to a distinction in this respect between the two securities, and particularly in the case of Norton v. Rose.
The time, however, may come, when a more general transfer of bonds added to the real utility of having a certain rule, will make it necessary for the legislature, or the courts, if they have power, to fix a rule also, in relation to the subject before us.
I should find considerable difficulty in proposing such a one, if it were now necessary; but perhaps one might be ^adopted by analogy to the act of 1794, enabling sureties in bonds to call upon the creditor to bring suit. Perhaps it would be a reasonable rule not to impute a want of diligence, in suing, until a refusal, after request, by the assignor; and further, that a return of nulla bona upon a fi. fa. should be sufficient evidence of diligence in pursuing the judgment, unless the assignor should have requested the assignee to sue out another kind of execution. I throw out these hints, however, at present, merely for consideration.
The uncertainty under which the assignee now stands, as to what may, or may not, in future, be deemed due diligence, by throwing a risk upon him, tends to produce a rigor, of proceeding against the obligor, which is hostile to the distinction between bills of exchange and bonds before alluded to, and will probably tend to throw the latter, when assigned, into as rapid a course of prosecution and recovery as the former.
In the case of Mackie v. Davies, it is said to be the duty of the assignee to bring suit. This is true as a general, though, if I am not bound by existing decisions, I might think not as an universal proposition. There may be strong cases, (such, for instance, as an absolute insolvency in the obligor, under the statute of bankruptcy, recently after the assignment,) in which it would be entirely fruitless as against him; and might even produce injury to the assignor ; for example, by postponing his recourse to (possibly) an ulterior and collateral indemnity, the fund for which might, in the meantime, be jeopardized and lost.
It was said, by one of the appellee’s counsel, that it is not enough that a want of diligence be shewn to exist, but also that a loss ensued therefrom. The answer is, that it lies upon the plaintiff in the action, after a neglect of diligence is fixed upon him, to exculpate himself, by shewing that due diligence would not have altered the case. This is not done in the case before us.
Nor is a return of nulla bona upon an execution, in all cases sufficient. There may be cases in which a fi. fa. *would certainly be ineffectual, and another kind of execution certainly produce the money. A debtor, for instance, may not have an atom of personal property, yet he may have a valuable estate in lands; or he may possess a place, or office, yielding him a considerable income, and which would be lost by his imprisonment. In these cases, the obligation to pursue due diligence (which involves a judicious course of proceeding) would point out, to the assignee, the propriety of deviating from the usual course of execution.
These and such like considerations shew the propriety of the general ground taken, by the court, in the case of Mackie v. Davies.
I will now come to the case before us.
The declaration, I suppose, is well enough. It states a case, which, standing independently, imports an adequate diligence on the part of the plaintiff. It is not necessary to state with minuteness and prolixity, all the circumstances which combine to shew an existence of due diligence on the part of the plaintiff. These, if the *803 diligence be impeached, must come out upon the trial.
This case now comes before us upon a demurrer to evidence. We must however make the same decision as if it had come by way of special verdict. Cocksedge v. Fanshaw, Dougl. 132. We are, therefore to judge as the jury would have done, had they found a general verdict, whether due diligence has been used or not.
In October 1794, the failure of the obligor was notorious. It is probable that this failure was not sudden but progressive. Yet, the first attempt to sue was not until the 23d of December following. No proof is exhibited of a prior diligence even in demanding the money. The parties both lived, or had agents, in the same town where the obligor lived, and the appellee must probably have known the declining situation of his affairs. Other persons, for a considerable time after the assignment, trusted the obligor and received payment. It is true that, about July, some did not *get paid; but, for any thing known to us, they might also have been deficient in diligence. In determining the question then before us, it is important, and perhaps the best criterion, that other creditors, in the intermediate time, by activity and diligence, procured payment. A course of indulgence granted, or pursued, by the assignee, shall not injure the assignor, who had no control over the subject. It discharges him from his liability. If it be said, that a judgment could not have been obtained in any court prior to the actual insolvency, the answer is, that the institution of a suit, by producing bail, or by jeopardizing the obligor’s credit, might have produced the money.
The consequences apprehended from this decision may not happen. In this case, every circumstance is material; and this decision will not affect cases where the circumstances are materially different.
I am, therefore, of opinion, that the judgment ought to be reversed, and entered for the defendant.
FLEMING, Judge.
The appellant’s counsel contended, in the first place, that there is a distinction between a bond assigned to satisfy a preceding debt, and one assigned for a commodity purchased at the time. But it is a distinction without a difference. For, whether it be the one or the other, still it is the price paid for the assignment; which,, according to the case of Mackie v. Davies, implies an agreement, that the assignee shall receive the money due upon the bond, or that the assignor will return the price.
The next point contended for was that the declaration was defective. But, if that were true, it would be too late to except at this time, as the objections may all be resolved into form : for the circumstances of the case are set forth in substance, and that is sufficient after verdict.
The third point was, that due diligence had not been used by the appellee; and that that alone absolved the assignor. I am not of that opinion however; for I think it necessary, in such cases, not only to shew- that there has been *a -want of diligence; but that the debt was lost in consequence of it. Immediate suit is not the only criterion, nor always indispensable : In some cases it might even be injurious. For if the obligor be insolvent, the suit would be useless; and if his circumstances be tottering, negotiation may effect more than an action. Accordingly, in practice, an immediate suit has never been required, but it is wisely left to the discretion of the assignee; whose interest is a sufficient security to the assignor that he will pursue the best course, both as to time and measures of obtaining payment. This is agreeable to the rule laid down in Mackie v. Davies ; which decided that questions of this kind depended upon circumstances; for that implies, that the assignee is to exercise his judgment upon them. The question therefore always is, whether the discretion has been abused or not; and there is no danger in the rule as thus understood ; because a long delay, when the debtor had visible property enough to satisfy the demand, without any effort on the part of the assignee to recover the debt, would be gross negligence amounting to abuse; but if -the debtor had no visible means, or was in such a situation that a suit would blast his credit and precipitate his ruin before judgment could be obtained against him, it is obvious that negotiation would be an honest exercise of discretion, and would best serve the interest of the assignor.
If we try the case, before us, upon these principles, it will be found to be clearly in favour of the appellee; because Bachus does not appear to have been able to pay the debt, at any time, after the date of the assignment. For, although he contrived to keep up a certain credit by a false appearance of business, it is certain that neither industry nor force could have recovered the money from him, as he had nothing to pay it out of. This is proved by the case of M’Rae, whose assiduity was constant, but ineffectual; and, although Wilder" and Campbell received payment for the bills evidently drawn upon their first sales, yet they and Stott were all disappointed afterwards. It is in vain to say, *that a suit might have procured the money from the property obtained in the contracts with those gentlemen; because that very step, by ruining the credit of the obligor, would have prevented the contracts: and I should be very unwilling to decide the cause upon a speculation, that the debtor might, possibly, have gone about to deceive one man, in order to satisfy another.
It appears to me therefore that the delay was justifiable as well upon principle, as upon the situation of Bachus. But I go further; and think it was so, upon the intention of the parties. For I do not believe that either of them understood that a suit was to be immediately brought, not only because that is not the usual course of proceeding in such cases; but because the bond, which is not a mercantile paper, had been taken the day before; and, from the nature and permanency of the security, indicated respite, and afforded some reason to the obligor to expect a little indulgence. Therefore, if Barksdale had intended at the time of taking it, or resolved, upon after *804 thought, without some new cause (and none appears) to put it in suit, on the next day, himself, or to procure some other person to do it, his conduct would have been contrary to good faith, and oppressive. Jeston v. Brookes, Cowp. 793. Of course, I cannot suspect him of it; but conclude that some indulgence was expected at the time of the assignment, and the rather as it was probably foreseen that patience and management might effect more than a suit.
I admit that the time, standing by itself, was long; and, if it were even doubtful whether an earlier process might not have produced the money, I should probably have thought that the plaintiff had abused his discretion, and that the defendant was exonerated. But there is not the slightest ground for doubt; because it is clear that Bachus was insolvent at the time of the assignment; and that he never had any means of paying afterwards.
Consequently, as I think the delay in bringing the suit did not occasion the loss of the debt, I am of opinion that the judgment ought to be affirmed.
*CARRINGTON, Judge.
Mackie v. Davies fixes that the assignor is liable upon due diligence on the part of the assignee, to be determined upon circumstances, and left in general to the decision of the jury. But, in the present case, there is a demurrer to the evidence; which substitutes the court for the jury, leaving the inferences from the facts, as well as the law, to the decision of the judges. And, upon a review of both, I think the case is decidedly against the plaintiff; who appears to have been culpably negligent, and to have forfeited the recourse which he might otherwise have had against the assignor. Ror, although the bond was payable on demand, and all the parties lived in Petersburg, no application for payment was made, or suit brought, until nine months after the date of the assignment; when a writ was taken from the hustings court, and afterwards dismissed, perhaps by compromise, or promise of payment. But whether so, or not, it left the case as if that action had never been brought; and therefore the cause rests upon the suit in the district court. That, however, was not instituted until eleven months after the assignment, during which time several other creditors got paid, and similar diligence on the .part of the plaintiff, might probably have been attended with similar success. If immediate steps had been taken, part of the property arising from the contracts made by the obligor during the spring and summer, might possibly have been arrested, or other sources of payment discovered: But these opportunities were all lost by the supineness of the plaintiff: I cannot agree, then, that the return of nulla bona was enough in this case: for the delay was gross; and that exonerated the defendant. My opinion therefore is, that the judgment of the district court should be reversed; and judgment entered for the defendant upon the demurrer.
LYONS, Judge.
The distinction contended for by the appellant’s counsel, between a bond assigned for a previous debt, and one for a present purchase, is not sustainable. A valuable consideration is all that is necessary to raise the As-sumpsit; and the law implies the value, without enquiry whether it was past or present, from the very act of the assignment. This destroys the distinction insisted on, and shews that the assignment is not payment in any case, unless the parties agree, that it shall be so considered.
There is as little foundation for exception to the declaration ; which states the cause of action with sufficient precision; and the evidence is not inconsistent with it.
The only question therefore is, What is the effect of the evidence; and whether the plaintiff has been guilty of such delaj' as to bar his redress against the assignor?
At the first opening of the cause, it struck me, that there was a mistake in applying the doctrine of bills of exchange to cases of assigned bonds; which differ from them in all circumstances.
For bills of exchange are mercantile papers, invented for the purposes of commerce, and subjected to the custom of a particular class of men. But bonds are the common securities of the country, contrived for the use of the people at large, and the assignment of them is subject to the general usages of the community. The law of bills, therefore, is inapplicable to the assignment of bonds, as they are founded upon different systems: and, pursuant to-that idea, the court, in the case of Norton v. Rose, held, contrary to the practice upon bills of exchange, that an equity against the assignor, followed the bond in the hands of the assignee.
The state of things prior to the act of assembly respecting assignments, will illustrate the distinction more clearly.
Before that statute, when bonds were transferred, it was necessary that a power of attorney should accompany the assignment, to enable the assignee to sue in the name of the assignor; to whom he was, in fact, but attorney, and was not bound to more than ordinary diligence. This practice, however, was found inconvenient, as the drawing of the power of attorney was troublesome, and the necessity of suing in the name of the obligee not only subjected him to costs, but gave him a control over the suit and its proceeds, *which was often injurious to the assignee; and therefore the statute was made merely to enable the latter to sue in his own name, but not to add to the circulation of bonds, or to subject those interested in them to the rules and despatch of mercantile papers: 3?or that was not necessary, as from the nature of a bond, its permanency, its dig-nitj' in a course of administration, and its obligation upon the heir, less danger of loss was to be apprehended from it, than from bills which were inferior to it in all these respects. Accordingly, from the time of passing the statute, the people have acted upon the old practice; and it has never been supposed that the assignee was bound to more than ordinary diligence. Indeed, any other construction would have repealed the statute; for it would have subjected assignees to such risks, and obligors to such unexpected suits, that neighbours and friends would have been unwilling, the one *805 to transfer, and the other to receive, the bond of a third upon such conditions.
It was with a view to this, that, in the case of Mackie v. Davies, I said, when speaking of the act of 1748, that the inconvenience of suing in the name of the assignor was removed by it, but that the rights of the parties continued as they were before : And it never entered into my mind, that the due diligence, occasionally mentioned by some of the judges in that case, was meant to extend further than ordinary diligence, fairly pursuing the interest of the assignor.
If we look to the result of a greater extension, the inconvenience will be palpable. In that case, the assignee will have to bring suit, without a moment’s delay; and without regard to the certainty of losing the debt by that mode of proceeding, or the probability of obtaining it by another. For he will then have to pursue his own interest, and not that of the assignor; and, if he acts according to a prescribed route, will have done his duty, and ensured his own safety, although he may have sacrificed that of his principal. But I leave it to candid men to say, which course is likely to be most beneficial to the assignor. According to my view, the assignee is left to a sound discretion; which binds him to integrity, ':fand the use of such diligence as a prudent man would take In his own affair, leaving him power to negotiate where that will be most for the advantage of the assignor, and compelling him to sue, only, where that will best promote his interest: According to the other, haste and undeviating attention to his own interest will be all that will be requisite, ■on the part of the assignee; and every thing else will be left to chance and the malignity of the debtor.
It was said, however, that the burden of the proof lay upon the plaintiff; and that he is bound to shew that he has used the utmost diligence. But that appears to me to be a mistake, and to reverse first principles. For the assignor, impliedly, stipulates, by the assignment, to pay the money, if it is not obtained from the debtor upon a suit brought against him. 'Therefore when the plaintiff shews that he has brought the suit, and that the officer has returned no effects upon the execution, the action accrues; and the assignor must relieve himself from it, by shewing that the debt has been lost by the blameable conduct of the assignee. For as the obligation was created by the assignment, and the action only postponed to the issue of the suit, when that is known, the assignor must shew how the obligation is barred. Which throws it upon him to prove culpable negligence in the plaintiff; and not upon the latter to shew that he has used extraordinary diligence.
The result is, that immediate suit is not required; but whenever the assignee shews that he has brought an action, and that nulla bona has been returned upon the execution, the assignor is bound to pay the money, unless he proves that there has been culpable negligence on the part of the plaintiff, and that the debt has been lost in consequence of it.
If we examine the case by that rule, the action is clearly sustainable, as I do not discover any culpable negligence on the part of the appellee; or that the delay has produced any injury to the appellant; or was inconsistent with the views of the parties, at the time of the assignment.
^'For, in the first place, Barksdale must have contemplated some delay, as he had, the day before only, taken the bond payable on demand, instead of an ordinary mercantile paper, as other merchants did, who meditated promptitude; which can only be accounted for upon the ground that he was content with interest, and meant to give time: and, as he imposed no injunction of despatch upon the assignee, it is not probable, as no cause is shewn for it, that he had changed his mind in so short a time, and meant to surprize the obligor with unexpected celerity; or that either party meant that more than ordinary efforts were to be made, to collect the debt.
In the next place, there is no reason to think that Fenwick meant unnecessary delay, but the contrary. For as a man in trade, the money would have been useful to his business; and he had no interest in favouring the debtor. The presumption therefore is, that he was sufficiently urgent for payment, as nothing appears to the contrary.
That he did not bring suit at an earlier day, cannot be imputed to him as a fault; because it is plain that no benefit could have resulted from it; and that it was probable, that negotiation might effect more. For Bachus was evidently insolvent at the time of the assignment, although he contrived to beep up the appearance of business for some time afterwards: which his creditors seem to have thought might, with patience on their part, eventually produce the means of complying with his engagements. They were disappointed indeed; but that does not prove that the plaintiff was negligent, or that a suit would have been attended with success. On the contrary, being a solitary instance, it might have stimulated the obligor to revenge, and led him, if he had any means, to give preference to others.
That Wilder and Campbell received payment for their first sales is not material. For those bills were manifestly drawn upon the purchases; and they, and Stott were all deceived afterwards.
*It is said however, that if the obligor had been pressed with a suit the money might possibly have been got out of the proceeds of the contracts with those gentlemen. But that, at best is a remote possibility; and the clear answer to it is, that if the suit had been brought, the contracts would never have been made, as it would have ruined the credit of the debtor, and prevented other people from trusting him.
If the conduct of the appellee be compared with that of the other creditors, his course will be found to have been perfectly justifiable. For none of them sued; but, considering that measure as prejudicial, they thought it best to wait for the results of the business of the debtor: And, surely, the appellee cannot be accused of culpable *806 negligence, in pursuing the method, that every body interested thought the most prudent.
As soon, however, as the business of the obligor ceased, and it became palpable that the motive for delay was at an end, the suit was brought; and, although it proved unproductive, there is not the slightest reason to believe, that, if it had been commenced at an earlier period, the result would have been different.
Upon the whole, the appellee appears to me to have pursued the course best calculated to promote the interest of the assignor; and, the latter not having proved any culpable negligence which occasioned the los.s of the debt, I am of opinion that the judgment of the district court is right; and, as the judges here are equally divided in opinion, it is, by the act of assembly, to be affirmed.